IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| REV. AUGUSTUS SIMMONS ENOXH, ) | |
| ) | |
| Plaintiff ) | 2:22-CV-00819-CB |
| ) | |
| vs. ) | CATHY BISSOON |
| ) | UNITED STATES DISTRICT JUDGE |
| M. HICE, COULEHAN, UNIT ) | |
| MANAGER; LT. TROUT, LT. FOR L- ) | |
| BLOCK; LT. KULIK, LT. FOR L BLOCK; ) | RICHARD A. LANZILLO |
| MAUREEN MALANOSKI, MAJOR OF ) | CHIEF UNITED STATES MAGISTRATE |
| UNIT MANAGE; MARTIN SWITZER, ) | JUDGE |
| MAJOR OF GUARD; CAPTAIN ) | |
| KENNEDY, RHU CAPTAIN; STEPHEN ) | REPORT AND RECOMMENDATION ON |
| BUZAS, DEPUTY SUPERINTENDENT; ) | DOC DEFENDANTS' MOTION FOR |
| MARK DIALESANDROS, DEPUTY ) | SUMMARY JUDGMENT |
| SUPERINTENDENT; MELODIE ) | |
| SIBANDA, REGISTER NURSE; VALERIE ) | ECF NO. 61 |
| GRABOWSKI, REGISTER NURSE; ) | |
| MICAH HIGH, REGISTER NURSE; ) | |
| JENNIFER ZEBLEY, REGISTER NURSE; ) | |
| LORAINE KAYLOR, NURSE; ASHLEY ) | |
| STILTON, NURSE; JENNIFER BEERS, ) | |
| NURSE; TERRY STRAIT, REGISTER ) | |
| NURSE; ASHLEY BOOKER, REGISTER ) | |
| NURSE; LORI JOZEFIK, NURSE; KEVIN ) | |
| MEITZLER, NURSE; WILLIAM ) | |
| NICHOLSON, HEALTHCARE SUPER; ) | |
| ROBERT SOLOMON, DOCTORS ) | |
| ASSISTANT; MARK HAMMER, ) | |
| DOCTORS ASSISTANT; JOHN DOE, ) | |
| CORRECTIONAL STAFF #1; JOHN DOE, ) | |
| CORRECTIONAL STAFF #2; JOHN DOE, ) | |
| CORRECTIONAL STAFF #3; JOHN DOE, ) | |
| CORRECTIONAL STAFF #4; JOHN DOE, ) | |
| CORRECTIONAL STAFF #5; JOHN DOE, ) | |
| CORRECTIONAL STAFF #6; AND ) | |
| ASHLEY LAYTON, ) | |
| ) | |
| Defendants ) | |

I.  Recommendation

It is respectfully recommended that the motion for summary judgment filed by Defendants Coulehan, Trout, Kulik, Malanoski, Switzer, Kennedy, Buzas, Dialesandro, Sibanda, Grabowski, High, Zebley, Kaylor, Stilton, Beers, Strait, Booker, Jozefik, Meitzler, Nicholson, and Layton ("DOC Defendants") (ECF No. 61) be GRANTED and that judgment be entered in their favor and against the Plaintiff, Rev. Augustus Simmons Enoxh ("Simmons").[1]  No genuine issue of material fact remains for trial regarding Simmons' failure to exhaust his administrative remedies, and the DOC Defendants are entitled to judgment as a matter of law on this affirmative defense.

II. Report

A. Relevant Background

Simmons claims that the Defendants responded with deliberate indifference to his COVID-19 infection in violation of his rights under the Eighth Amendment.  The DOC Defendants request summary judgment based on the affirmative defense that Simmons failed to exhaust his administrative remedies as mandated by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  ECF No. 61.  They argue that Simmons' failure to identify any DOC Defendant in the one grievance he pursued through final appeal concerning his COVID-19 infection (Grievance No. 909748) constituted a procedural default that precludes his claims against the DOC Defendants in this or any other action.

Simmons does not dispute that he failed to identify any DOC Defendant in his grievance. Instead, he argues that a general exception to the PLRA's exhaustion requirements based on the unprecedented impact of the COVID-19 pandemic should be recognized. He notes, for example,

---

[1] The DOC Defendants' motion is before the undersigned for Report and Recommendation pursuant to 28 U.S.C. §636(b)(1).

that the DOC's general grievance policy, DCM-804, has no "mechanism for PANDEMICS or national emergencies." ECF No. 68-1, p. 2. He also argues that it was impractical for him to know the names of all persons involved in his treatment because the COVID-19 response within the prison was so "vast." *Id.* Finally, he asserts that the severity of his COVID-19 symptoms made it impossible for him to investigate the facts related to his grievance and, thereby, rendered the grievance process "unavailable." Each of the parties' contentions will be addressed in turn after acknowledging the applicable standard of review.

B. Standard of Review

Federal Rule of Civil Procedure 56(a) requires the district court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993); *Clement v. Consol. Rail*

*Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). On a motion for summary judgment, "a pro se plaintiff is not relieved of his obligation under [Federal Rule of Civil Procedure] 56 to point to competent evidence in the record that is capable of refuting a defendant's motion ..." *Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (citation omitted). Put another way, *pro se* status does not relieve a non-moving party of his "obligation under Rule 56(c) to produce evidence that raises a genuine issue of material fact." *Id*. (quoting *Boykins v. Lucent Techs., Inc.*, 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000)); *see also Winfield v. Mazurkiewicz*, 2012 WL 4343176, at *1 (W.D. Pa. Sept. 21, 2012).

    C. Discussion and Analysis

        1. Simmons' failure to identify any DOC Defendant in his grievance constituted a procedural default and, unless excused, a failure to exhaust his administrative remedies.

The PLRA requires an incarcerated individual to exhaust any available administrative remedies before he may commence a lawsuit challenging the conditions of his confinement. 42 U.S.C. § 1997e(a). "Exhaustion is thus a non-jurisdictional prerequisite to an inmate bringing suit and, for that reason ... it constitutes a 'threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time.'" *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018) (quoting *Small v. Camden County*, 728 F.3d 265, 270

(3d Cir. 2013)) (internal quotations omitted). The PLRA's exhaustion requirement applies to all claims relating to prison life that do not implicate the duration of the prisoner's sentence. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). Proper exhaustion under the PLRA requires that an inmate "complete the administrative review process in accordance with the applicable procedural rules." *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Individual prisons provide these procedural rules. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004) (determining whether "a prisoner has 'properly' exhausted a claim ... is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances").

The DOC's general grievance process is set forth in policy DC-ADM 804, which is available at https://www.cor.pa.gov/About% 20Us/Documents/DOC% 20Policies/804% 20Inmate% 20Grievances.pdf (last viewed July 24, 2024). "DC-ADM 804 provides a general, though rigorous, mechanism for inmate grievances." *Moore v. Lamas*, 2023 WL 371397, at *2 (3d Cir. Jan. 24, 2023)). The United States Court of Appeals for the Third Circuit has summarized the policy's relevant procedures as follows:

> ADM 804 creates the three-step Inmate Grievance System. First, an inmate must submit a grievance to the Facility Grievance Coordinator. The grievance must include the relevant facts, individuals involved, claims alleged, and relief sought. A different official—the Grievance Officer—reviews the grievance and submits an initial response. The inmate may appeal the initial response to the Facility Manager, who reviews it and issues a decision. The inmate may file a final appeal to the Secretary of Corrections' Office of Inmate Grievances and Appeals .... ADM 804 requires an inmate to specify in his grievance any alleged violation of department regulations or other law as well as specify the compensation or legal relief the inmate desires.

*Prater v. Dep't of Corr.*, 76 F.4th 184, 203-04 (3d Cir. 2023).

5

DC-ADM 804 "is the exclusive means of exhaustion" as to most matters of prison life. *Id.* at 204. DC-ADM 804 directs that a grievance must "be legible [and] understandable"; it must "include a statement of the facts relevant to the claim" as well as "the date, approximate time, and location of the event(s) that gave rise to the grievance"; it must "*identify individuals directly involved in the event(s)*" and "specifically state any claims [the inmate] wishes to make concerning violations of Department directives, regulations, court orders, or other law"; and, as previously discussed, it must identify "the specific relief sought," including "compensation or other legal relief normally available from a court." DC-ADM 804 § 1(A)(11) (emphasis supplied). Thus, while the PLRA does not require an inmate-plaintiff to "name all defendants," DC-ADM 804 requires identification of individuals directly involved in the events at issue in the grievance. "The failure to identify [Defendants] in the[] relevant ... grievances constitutes a 'procedural default,' and does not amount to 'proper exhaustion.'" *Roten v. Little*, 2024 WL 1514182, at *7 (W.D. Pa. Apr. 8, 2024) (Eddy, J). And "in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constitute[s] a failure to properly exhaust his administrative remedies under the PLRA." *Williams v. Pa. Dep't of Corr.*, 146 Fed. Appx. 554, 557 (3d Cir. 2005); *see also Preziosi v. Morris*, 2022 WL 3586667, at *6 (W.D. Pa. Aug. 22, 2022) (holding that inmate failed to exhaust against certain defendants where his grievance "failed to provide enough information indicating they were involved in the events about which he was complaining"). The purpose of this requirement is "to put the prison officials on notice of the persons claimed to be guilty of wrongdoing." *Spruill v. Gillis*, 372 F.3d 218, 234 (3d Cir. 2004).

Simmons filed Grievance No. 909748 on January 14, 2021. ECF No. 68-2. It stated as follows:

> Today is 1-13-2021. After several attempts to receive more treatment for my Covid-19 symptoms for almost two weeks now I have been suffering body aches, zero taste, and smell, loss of appetite. On Monday, I was given a Covid-19 test but since then I haven't received the results for this test or any kind of treatment. I now request for Covid-19 treatment and the results to my Covid-19 test. This failure to due (sic) ones (sic) medical duty is malpractice and a violation of the Eighth Amendment. My suffering should be resolved with an adequate monetary payment.

*Id.*, p. 1.[2]

The DOC Defendants emphasize that while Simmons' grievance identified his symptoms, complained of inadequate treatment, and requested his COVID-91 test results, it did not identify any individual, including any Defendant in this action, who he believed had provided inadequate care or failed to follow COVID-19 mitigation measures in the prison.

Simmons does not dispute that he did not identify any DOC Defendant in his grievance concerning his COVID-19 treatment. *See* ECF No. 64 (DOC Defendants' concise statement of material facts), ¶ 5; ECF No. 69 (Simmons' responsive concise statement of material facts), ¶ 5. The DOC Defendants have thus satisfied their threshold burden on summary judgment to produce evidence that Simmons has failed to exhaust his administrative remedies. *See Quinones-Cedeno v. Hutchinson*, 2024 WL 1017314, at *5 (W.D. Pa. Mar. 8, 2024). This shifts the burden of production to Simmons to produce evidence to demonstrate a genuine issue of material fact to support that his procedural default was somehow excused or that his administrative remedies were "unavailable." *See Green v. Wetzel*, 2020 WL 1249205, *4 n.7 (W.D. Pa. March 16, 2020) (citations omitted). Simmons has produced no such evidence.

---

[2] Simmons asserted in his responsive concise statement of material facts that he filed other grievances relating to COVID-19. *See* ECF No. 69, ¶ 3. However, he has not identified anything in the record or produced any documents to support this assertion. In any event, Simmons does not dispute that Grievance No. 909748 is the only COVID-19-related grievance that he appealed through the full DC-ADM 804 process. See ECF No. 64 (DOC Defendants' concise statement of material facts), ¶ 4; ECF No. 69 (Simmons' responsive concise statement), ¶ 4.

2. Simmons' procedural default is unexcused.

   a. Prison officials did not identify the DOC Defendants.

Consistent with the purpose of the identification requirement, "the prison can excuse an inmate's failure to specifically name individuals by identifying the unidentified persons and acknowledging that they were 'fairly within the compass of the prisoner's grievance.'" *Roten*, 2024 WL 1514182, at *7 (quoting *Spruill*, 372 F.3d at 234). In this case, however, the record includes no evidence to support that prison officials knew that any DOC Defendant was involved in events relating to Simmons' claim of an inadequate response to his COVID-19 symptoms. Indeed, few of the DOC Defendants have medical responsibilities, and nothing in the Initial Review Response to Simmons' grievance identifies any person who may have been involved in this treatment. *See* ECF No. 63-3.

   b. The COVID-19 pandemic did not excuse compliance with DCM-804.

Simmons argues that the COVID-19 emergency excused his obligation to properly exhaust his administrative remedies. This argument is contrary to all relevant precedent. Courts have consistently rejected the proposition that the pandemic created a blanket exception to the PLRA's exhaustion requirement. *See, e.g., Brooks v. Washington*, 2024 WL 1363967, at *3 (W.D. Mich. April 1, 2024) (collecting cases). The PLRA mandates a strict exhaustion requirement, which has been described as "no nonsense." *Valentine v. Collier*, 978 F.3d 154, 161 (5th Cir. 2020). Under 42 U.S.C. § 1997e(a), inmates must exhaust "such administrative remedies as are available" before bringing challenges to prison conditions in federal court. This requirement is compulsory, leaving courts with no discretion to consider claims that have not been exhausted. *Jones v. Bock*, 549 U.S. 199, 211, (2007). The Supreme Court has consistently refused to create exceptions to the PLRA's stringent exhaustion mandate. Indeed, the Court has

confirmed there is no "special circumstances" exception. *Ross v. Blake*, 578 U.S. 632, 639-40 (2016). The PLRA's exhaustion requirement was set by Congress, and Congress alone can change it. *See id.* In other contexts, Congress has made some adjustments and accommodations in response to the COVID-19 pandemic. For example, the Coronavirus Aid, Relief, and Economic Security (CARES) Act relaxed certain Federal Rules of Criminal Procedure to allow for remote hearings in specified circumstances. *See* Pub. L. No. 116-136, § 15002(b), 134 Stat. 281, 528 (2020). But neither the CARES Act nor any other legislation altered the PLRA in response to the pandemic. Thus, this Court—and Simmons—remain bound by it. *See McCullough v. Ransom*, 2022 WL 821427, at *7 (M.D. Pa. Mar. 17, 2022). Simmons' argument that DC-ADM 804 lacks any "mechanism" to deal with emergencies such as the COVID-19 pandemic is also mistaken. The policy provides that the Secretary of the DOC has the authority to suspend DC-ADM 804 "in the event of an emergency or extended disruption of normal facility operations." DC-ADM(V). No such suspension was determined to be necessary in response to the pandemic. Accordingly, no general exemption to PLRA exhaustion based on the COVID-19 pandemic excuses Simmons' procedural default.

        c. Simmons' administrative remedies were available.

A prisoner is only required to exhaust administrative remedies that are "available." *Rinaldi*, 904 F.3d at 268 (citing *Woodford*, 548 U.S. at 93). An administrative remedy is unavailable, and administrative exhaustion is therefore excused, in three situations: "(1) when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use,' such as when no ordinary prisoner can discern or navigate it; or (3) when 'prison administrators thwart inmates from taking advantage of a grievance process through

machination, misrepresentation, or intimidation.'" *Id.* at 266-67 (quoting *Ross v. Blake*, 578 U.S. 632, 643-44 (2016)). Once a defendant has made a threshold showing of the plaintiff's failure to exhaust, as the DOC Defendants have done in this case, the burden shifts to the plaintiff to show that the administrative remedy process was unavailable. *Id.* at 268.

Simmons first argues that the multitude of individuals involved in the prison's response to the COVID-19 pandemic and his care made it impractical for him to name all DOC Defendants. The disingenuity of this argument is palpable. The notion that so many individuals were involved in his care that he could not name a single individual is not supported by the record and, in any event, it is not a basis for excusing this requirement of DC-ADM 804. This explanation does not support that the grievance process was a simple dead end, incapable of use, or thwarted by the actions of prison personnel. Even assuming Simmons could not identify all DOC Defendants, he has offered no explanation for his failure to identify any individual; nor has he explained why his grievance did not at least describe the position of one or more individuals involved in his care or his interaction with them as an alternative means to identify them. His request to be excused from compliance with DC-ADM 804's identification requirement based on the multitude of individuals involved is without merit.

Simmons next argues that his administrative remedies were "unavailable" because he was too ill with COVID-19 symptoms to identify any individual who denied him proper medical treatment. This argument fails on multiple grounds. First, it is wholly unsupported by the record. Simmons has produced no evidence that he was so ill that he could not identify even a single DOC Defendant in his grievance. Although he raises this argument in his brief in opposition to the DOC Defendants' motion, he included no factual assertions, let alone evidence, to support it in his responsive concise statement of material facts. *See* ECF No. 69. Simmons

does not contend he was too ill to file a grievance because he did so. Moreover, if Simmons believed his illness prevented him from properly grieving his concerns, he had the option to request an extension to submit his grievance. DC-ADM 804 authorizes requests for extensions of the normal 15-working day period to file a grievance. *See* DC-ADM 804 § 1.C.2.e. *See also Good v. Doe*, 2021 WL 2660859, at *6 (M.D. Pa. June 29, 2021). Requests for extensions for filing grievances are "considered on a case-by-case basis." *Id.*

The Court of Appeals for the Third Circuit recently addressed whether a Pennsylvania state prisoner who had been obstructed in some way from filing a grievance was required to request an extension to file the grievance after the impediment was removed. *See Talley v. Clark*, --- F.4th ---, 2024 WL 3611794, at *3 (3d Cir. Aug. 1, 2024). The Court answered that question in the affirmative. The Court of Appeals noted that:

> Requests to extend the 15-day deadline are part of the Pennsylvania prison administrative remedial scheme. [The Plaintiff's] scenario falls within policy 804 § 1.C.2.e's broad provision of an administrative avenue for relief from the grievance deadline on "any basis." [Plaintiff] was thus required to pursue this remedy when the impediment no longer existed ... Because [Plaintiff] did not do so, he failed to exhaust as required by the PLRA. To hold otherwise would vitiate the exhaustion requirement whenever *a prisoner's severe illness* or placement in restrictive confinement for safety concerns temporarily precludes access to the grievance process.

*Talley*, 2024 WL 3611794, at *5 (emphasis added). Here, Simmons could have sought an extension to file his grievance when he had recovered sufficiently to follow the requirements of DC-ADM 804. He did not do so. By electing to pursue the grievance process as he did, he cannot now claim the policy's requirements were unavailable to him. *See id.*

D. Conclusion

11

For the reasons discussed, it is respectfully recommended that the DOC Defendants' motion for summary judgment (ECF No. 61) be granted.

III.   Notice to the Parties Concerning Objections

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72((b)(2), and Local Rule 72(D)(2), the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. *Brightwell v. Lehman,* 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72(D)(2).

DATED this 14th day of August, 2024.

RESPECTFULLY SUBMITTED:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE