IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | | |
|---|---|---|
| REV. AUGUSTUS SIMMONS ENOXH, | ) ) ) | |
| | ) | 2:22-CV-00819-CB |
| Plaintiff | ) ) | |
| | ) | CATHY BISSOON |
| vs. | ) ) | Chief United States District Judge |
| | ) | |
| M. HICE, ROBERT SOLOMON, DOCTORS ASSISTANT; MARK HAMMER, DOCTORS ASSISTANT; JOHN DOE, CORRECTIONAL STAFF #1; JOHN DOE, CORRECTIONAL STAFF #2; JOHN DOE, CORRECTIONAL STAFF #3; JOHN DOE, CORRECTIONAL STAFF #4; JOHN DOE, CORRECTIONAL STAFF #5; AND JOHN DOE, CORRECTIONAL STAFF #6, | ) ) ) ) ) ) ) ) ) ) ) ) ) | RICHARD A. LANZILLO Chief United States Magistrate Judge   IN RE: ECF NO. 77 |
| | ) | |
| Defendants | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
MEDICAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**


I.    **RECOMMENDATION**

Defendants Mark Hammer, M. Hice, and Robert Solomon's motion for summary judgment is before the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636. ECF No. 77. It is respectfully recommended that the motion be GRANTED in part and DENIED in part. The motion should be granted as to Simmons' Eighth Amendment claim based on the COVID-19 treatment he received on and before January 15, 2021. The motion should be denied as to (1) Simmons' Eighth Amendment claim based on his medical treatment between January 15 and

January 26, 2021; (2) his Eighth Amendment claim based on the denial of the renewal of his rescue inhaler; and (3) his First Amendment retaliation claim based on the denial of renewal of his rescue inhaler following his filing of a grievance objecting to his medical treatment.

## II.  REPORT

### A.  Background and Relevant Procedural History

Plaintiff August Simmons Enoxh ("Simmons"), an inmate previously housed at the Pennsylvania State Correctional Facility at Greene ("SCI-Greene"), commenced this pro se civil rights action under 42 U.S.C. § 1983 against several officials of the Pennsylvania Department of Corrections and individuals employed by Wellpath, LLC, the company contracted to provide medical services to Pennsylvania inmates.[1] His Complaint challenged the constitutional adequacy of the medical care he received at SCI-Greene for his COVID-19 infection and a later decision to deny his request for a respiratory inhaler.  In additional to these Eighth Amendment claims, he also asserted a First Amendment retaliation claim based on the denial of the inhaler, which followed his filing a grievance challenging the adequacy of his medical care. The claims against all Defendants except Mark Hammer, M. Hice, and Robert Solomon (collectively, "Medical Defendants") were previously dismissed.  *See* ECF

---

[1] This case was stayed during Wellpath Holdings LLC's bankruptcy proceedings in the United States Bankruptcy Court for the Southern District of Texas. *See* ECF No. 97. The case was reopened following confirmation of Wellpath Holdings LLC's plan of reorganization. *See* ECF Nos. 97, 98. The Medical Defendants have not asserted discharge in bankruptcy or any provision of the confirmed bankruptcy plan as a ground for summary judgment in their favor. Their pending motion for summary judgment presents solely a challenge to the sufficiency of the record to support Simmons' claims.

2

Nos. 45, 94. Hice served as the healthcare administrator at SCI-Greene; Hammer, as a physician's assistant, and Solomon, as a physician.

In support of their summary judgment motion, the Medical Defendants rely exclusively on selected portions of approximately 341 pages of Simmons' medical records, which they summarize in their Concise Statement of Material Facts. *See* ECF No. 83. Simmons filed a responsive Concise Statement of Material Facts (ECF No. 101) that included declarations under 28 U.S.C. § 1746 from Simmons (ECF No. 102) and another inmate, Harold Leapheart (ECF No. 101-2).[2]

**B.    Material Facts**

**Simmons' transfer to SCI-Greene and COVID-19 Quarantine (December 18, 2020 – January 13, 2021)**

Simmons was transferred to SCI-Greene on or about December 18, 2020, during the COVID-19 pandemic. Upon arrival, he was placed in quarantine and medically monitored. On January 10, 2021, Simmons complained of "body aches," and on January 11, he registered a temperature of 100.4°F, pulse of 80, oxygen saturation of 98%, and respiratory rate of 18. *See* ECF No. 83-1, p. 225. That same day, PA Hammer noted Simmons' complaints of pain and ordered a nasal swab for COVID-19 testing. Simmons was tested again on January 12, 2021, and the result returned positive on January 14, 2021. Dr. Solomon reviewed the results and ordered vitamin D and zinc supplements and Simmons' transfer to the prison infirmary.

---

[2] Leapheart's declaration has his name typed at the end with a "(s)" notation rather than bearing a written signature. It also appears to have been typed by the same person who prepared Simmons' declaration. Both declarations share a common typeface and include similar capitalization, spelling, and grammar errors. Despite these concerns, the Court will consider Leapheart's declaration as part of the record for purposes of the Medical Defendants motion.

**COVID-19 Monitoring and Infirmary Care (January 14-15, 2021)**

Pursuant to Dr. Solomon's order, Simmons was admitted to the prison infirmary on January 14, 2021. Dr. Solomon classified Simmons' COVID-19 illness as "mild care/level 2," and assessed him as clinically "stable." ECF No. 83-1, pp. 213-214. Per the infirmary order, Simmons' vitals were to be checked twice daily, the practitioner was to be called for "change in condition," and Simmons could be "up ad lib," meaning he was free to walk. Vitamin D and zinc supplements were continued. *Id.*

RN Zebley also evaluated Simmons on January 14. She noted that he reported a sore throat and joint pain but was alert, oriented, ambulating independently, breathing comfortably on room air, and not in acute distress. Simmons' medical records also note that Simmons complained of "muscle pain" on January 14. *Id.*, pp. 215, 218. Dr. Solomon visited Simmons' cell during rounds and observed him to be asleep. *Id.*, pp. 218-20. Simmons acknowledges that Dr. Solomon came to his cell on this date but states he was unable to move because he was in great pain. ECF No. 102, p. 1.

On January 14 and 15, Simmons was attended by nursing staff, including RNs Valerie Grabowski, Alexandria Quarture, Micah High, and Melodie Sibanda. Simmons reported muscle pain, sore throat, and loss of smell and taste. *See* ECF No. 83-1, p. 202. His vital signs remained stable, oxygen saturation consistently exceeded 98% on room air, lung examinations were clear, and Simmons exhibited no signs of respiratory distress. *Id.*, pp. 199-215. Nursing assessments consistently reported

4

COVID-19 illness without complication, and the treatment plan focused on monitoring, hydration, and breathing exercises. *Id.* On January 15, Dr. Solomon re-evaluated Simmons and noted he was stable and had improving symptoms. Simmons remained on mild care status with continued monitoring. *Id.*, pp. 202-24.

Simmons' medical records evidence that, on January 14-15, medical staff regularly monitored his vital signs and assessed his physical condition. Each time, they recorded normal results and findings. *See id.*, pp. 199-201, 215-17, 223, 229, 234, 239. On each occasion, they also noted that Simmons had not taken any over-the-counter antipyretic (e.g., Tylenol or Motrin) or cough medicine. *Id.* These records suggest that Simmons had a mild COVID-19 infection from which he had substantially recovered as of January 15. But the medical records submitted by the Medical Defendants include no entries between January 15 and February 5, 2021; they do not even record the date Simmons was released from the infirmary.[3] And the Medical Defendants have not submitted affidavits or other evidence to address this gap in the records.

In contrast, Simmons attests that he continued to experience severe and debilitating joint, muscular, and breathing pain that did not begin to subside until January 26. ECF No. 102, pp.1-2 (Simmons Affidavit); ECF No. 101-2 (Leapheart Affidavit). He further attests that, during this time, he repeatedly reported his severe pain to prison "medical staff," including PA Hammer, and that he made daily requests

---

[3] Although the Medical Defendants have submitted hundreds of pages of medical records, only a small number relate to Simmons' COVID-19 treatment or his request for renewal of his inhaler. It appears that the Medical Defendants produced the other records to demonstrate that Simmons frequently avails himself of prison medical services and that medical personnel regularly attend to his needs.

for medication to alleviate the pain. *Id.* He also attests that Dr. Solomon was made aware of his reports of pain and daily requests for pain medication. *Id.* Simmons submits that his pain was so severe and consistent that it rendered him unable to eat or sleep from January 11 until January 26. *Id.*

### Post-COVID Respiratory Complaints and Inhaler Renewal Requests (February 5 – May 2021)

At some point, Simmons was discharged from the infirmary, although the record does not disclose the date of his discharge or any other information regarding Simmons' condition between January 15 and February 5, 2021. On February 5, Simmons was seen by PA Hammer. Simmons requested renewal of a rescue inhaler, which Simmons had previously received every four to five weeks since July 2020 due to symptoms associated with asthma or other respiratory issues. Simmons' medical records document that he suffers from "mild intermittent asthma." ECF No. 83-1, pp. 2, 91. Hammer's notes from the February 5 encounter record that Simmons "state[d] that the dust causes breathing problems in the RHU" and that "his throat swells up in the night and wakes him up so he uses the inhaler." *Id.*, p. 197. Hammer also recorded that Simmons stated that he had "some form of bronchitis" and "unknown allergies." Hammer observed that despite Simmons' consistent use of the inhaler since July of 2020, he "had no sick call visits in that time span for respiratory complaints." *Id.* Hammer declined to renew the inhaler and advised Simmons to seek sick call for future symptoms.[4] *Id.*

---

[4] It appears that Simmons' inhaler was renewed at some later point as his medications listed in his medical record for December 13, 2022 include "ALBUTEROL HFA INHALER - [INHALE 2 PUFF(S) ORALLY FOUR TIMES DAILY AS NEEDED FOR SHORTNESS OF BREATH] --2022-11-04- -2023-06-01." ECF No. 83-1, p. 39.

In March 2021, Simmons underwent routine tuberculosis testing and submitted additional sick-call requests related to breathing concerns. He was evaluated again by Hammer on March 19, 2021, reporting nighttime bronchitis symptoms and dust-related breathing difficulty. A respiratory examination revealed clear lungs and normal cardiac findings. Hammer advised Simmons to notify staff when symptoms occurred and told him that a request for a second opinion would be communicated to supervisory medical staff, although the record is silent as to whether a second opinion was ordered or obtained. *Id.*, pp. 187-88.

On May 23, 2021, Simmons complained to a prison nurse of "shortness of breath." *Id.*, pp. 176-77. Hammer saw Simmons two days later, on May 25. Simmons reported that he "almost had an asthma attack" two days earlier while working outside in the prison yard. *Id.*, p. 169. He again requested renewal of his inhaler. *Id.* Hammer declined the request, noting that he observed "no respiratory distress," the plan was to continue to "monitor" Simmons, and that he advised Simmons to "dress appropriately for weather while exercising." *Id.*, pp. 169-70.

## C.    Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) requires the district court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material

fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Loc. 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991). When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).

### D. Discussion and Analysis

**1. The Medical Defendants are entitled to summary judgment on Simmons' Eighth Amendment claim relating to medical treatment provided up to January 15, 2021, but genuine issues of material fact remain regarding the constitutional sufficiency of his treatment between January 15 and 26, 2021.**

The rights guaranteed by the Eighth Amendment include the right of state prisoners to medical care. *See Estelle v. Gamble*, 429 U.S. 97 (1976) (recognizing that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment") (internal quotation omitted). To establish a claim for violation of this right, the plaintiff must prove that: (1) he had a serious medical need, and (2) prison officials acted with deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

This first element of Simmons' Eighth Amendment claim is not in dispute. A medical need is "serious" if it has been diagnosed by a physician as requiring treatment or is so obvious that a layperson would recognize the necessity for medical attention. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). A COVID-19 infection "certainly presents a serious medical [need]." *Walker v. Wetzel*, 2022 WL 433161, at *8 (M.D. Pa. Feb. 11, 2022), *aff'd*, 2022 WL 4103632 (3d Cir. Sept. 8, 2022). The issue raised by the Medical Defendants' motion is whether the record can support a finding that they responded to Simmons' COVID-19 infection and symptoms with deliberate indifference.

Unlike the objective standard that applies to the first element of the claim, the second element involves a subjective inquiry. A prison official acts with deliberate indifference to a prisoner's medical needs only when he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Such indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990). In contrast, "an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim." *Tillery v. Noel*, 2018 WL 3521212, at *5 (M.D. Pa. June 28, 2018) (collecting cases). Such complaints fail as constitutional claims

because "the exercise by a doctor of his professional judgment is never deliberate indifference." *Gindraw v. Dendler*, 967 F. Supp. 833, 836 (E.D. Pa. 1997) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.")). "Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983." *Tillery*, 2018 WL 3521212, at *5 (citing *Gause v. Diguglielmo*, 339 Fed. Appx. 132 (3d Cir. 2009) (characterizing a dispute over pain medication as the type of "disagreement over the exact contours of [plaintiff's] medical treatment" that does not violate the constitution)). "[P]rison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67 (citations omitted). Based on this latitude, "courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care." *Hensley v. Collins*, 2018 WL 4233021, at *3 (W.D. Pa. Aug. 15, 2018) (quoting *Clark v. Doe*, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000)). *See also Wisniewski v. Frommer*, 751 Fed. Appx. 192, 195-96 (3d Cir. Oct. 3, 2018) (noting that "there is a critical distinction 'between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment.'") (quoting *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017)).

"Nonetheless, there are circumstances in which some care is provided yet it is insufficient to satisfy constitutional requirements." *Palakovic v. Wetzel*, 854 F.3d 209,

228 (3d Cir. 2017).  These circumstances include, for example, where prison officials, "with deliberate indifference to the serious medical needs of the inmate, opt for 'an easier and less efficacious treatment' of the inmate's condition.'" *Id.* (quoting *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978)) (internal citation omitted).  Similarly, prison officials may not deny reasonable requests for medical treatment when such "denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,'" *id.* (quoting *Monmouth County Corr. Inst. Inmates*, 834 F.2d at 346) (internal citation omitted), or intentionally refuse to provide care where the need for such care is acknowledged.  *Id.* (citing *Ancata v. Prison Health Servs.*, 769 F.2d 700, 704 (11th Cir. 1985)).

The treatment provided to Simmons between the onset of his infection until January 15 conformed to the requirements of the Eighth Amendment.  The record shows that Dr. Solomon moved Simmons to the infirmary where medical personnel, including PA Hammer, regularly examined him and monitored his vital signs on January 14 and 15.  While Simmons may disagree with the use of zinc and vitamin D to treat his illness, the record reflects that this was based on Dr. Solomon's considered medical judgment and objective examination and vital sign findings.  Simmons has produced no evidence to support that a more efficacious treatment was available at that time.  Dr. Solomon assessed that Simmons' illness was "mild" and that he was clinically "stable."  Based on these medical judgments, Dr. Solomon determined Simmons to be appropriate for "care/level 2"[5] and ordered twice-daily

---

[5] The record does not include information concerning the differing levels of care or the specific criteria for each.

11

vital-sign monitoring and continuation of vitamin D and zinc supplements. Simmons' temperature, blood oxygen, and respiration were monitored twice each day on January 14 and 15 and were within normal limits.

Determining the constitutional sufficiency of the care Simmons received on January 14 and 15, however, does not end the inquiry. Simmons asserts that he continued to experience joint, muscle, and breathing pain that did not begin to subside until January 26; he asserts that this pain was so severe that it made it impossible for him to eat or sleep. He further asserts that the Medical Defendants ignored his daily pleas for medication to alleviate his severe pain. He supports his factual assertions with his own affidavit and the affidavit of inmate Leapheart. In contrast, the record provided by the Medical Defendants is silent for the time between January 15 and February 5. They provide no evidence regarding the progress of Simmons' recovery after January 15, whether medical staff continued to monitor his condition, the date he was released from the infirmary, or whether he continued to receive zinc and vitamin D or any other medication. While the record regarding the medical attention Simmons received on January 14 and 15 may cast some doubt on the credibility of Simmons' assertions about this treatment thereafter, this does not permit the Court to reject Simmons' otherwise uncontroverted assertions. Accepting Simmons' properly supported factual assertions as true, as the Court must, genuine issues of material fact remain as to whether the Medical Defendants acted with deliberate indifference to Simmons' complaints of severe pain associated with his COVID-19 infection between January 15 and January 26, 2021.

Based on the record, it is recommended that the Court grant the Medical Defendants' motion for summary judgment on Simmons' Eighth Amendment claim to the extent the claim challenges treatment of his COVID-19 infection on and before January 15, 2021, but deny the motion to the extent the claim challenges care provided between January 15 and 26, 2021.

2. **The Medical Defendants' motion should be denied as to Simmons' Eighth Amendment claim based on Hammer's refusal to renew Simmons' inhaler.**

Simmons also claims that Defendant Hammer acted with deliberate indifference to his serious medical needs when he declined to renew his rescue inhaler when Simmons requested it on February 5, 2021. The Medical Defendants argue that this decision was based on "clinical findings" and an exercise of medical judgment and therefore cannot be considered deliberately indifferent to Simmons' medical need (asthma and other respiratory issues). The problem with the Medical Defendants' challenge to this claim is they base it solely on Simmons' medical records. These records note that Hammer saw Simmons on February 5 and that Simmons requested that renewal of his order for an inhaler, which Simmons had received every four to five weeks since July 2020. Hammer's notes record that Simmons "state[d] that the dust causes breathing problems in the RHU" and that "his throat swells up in the night and wakes him up so he uses the inhaler." ECF No 83-1, p. 197. Hammer also recorded that Simmons stated that he had "some form of bronchitis" and "unknown allergies." *Id*. Hammer observed that despite Simmons' use of the inhaler since July of 2020, he "had no sick call visits in that time span for respiratory complaints." *Id*.

13

Based on these notes alone, the Medical Defendants urge the Court to hold as a matter of law that Hammer determined that renewal of his inhaler was not medically necessary or appropriate. As detailed below, however, the record is sufficient to support that Hammer denied the renewal prescription in retaliation for Simmons' having filed a grievance against Hammer and others based on his dissatisfaction with his COVID-19 treatment. Given this, the record is adequate to support a finding that Hammer based his denial of the inhaler on impermissible nonmedical reasons rather than his considered medical judgment. The Medical Defendants have therefore failed to establish their entitlement to judgment as a matter of law as to this Eighth Amendment claim.[6]

### 3. The Medical Defendants' motion should be denied as to Simmons' retaliation claim against PA Hammer.

Simmons also brings a First Amendment retaliation claim against Defendant Hammer. Under the First Amendment, "[r]etaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution." *White*, 897 F.2d at 111-12. To support a viable First Amendment retaliation claim, a plaintiff must produce evidence to support that "(1) he engaged in a constitutionally protected activity; (2) he suffered, at the hands of a state actor, adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the protected activity was a substantial or motivating

---

[6] The record does not appear to support a finding that Defendant Hice, the healthcare administrator at SCI-Greene, was personally involved in medical decisions regarding Simmons' post-January 15 COVID treatment or whether to renew his inhaler prescription. The Medical Defendants, however, have not made this argument in their motion, so the Court should not reach it.

factor in the state actor's decision to take adverse action." *Fantone v. Latini*, 780 F.3d 184, 191 (3d Cir. 2015), as amended (Mar. 24, 2015) (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)).  An "adverse action" is one that would "deter a person of ordinary firmness" from exercising First Amendment rights. *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)).  Retaliatory motive can be shown with direct evidence or inferred from either: (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action; or (2) a pattern of antagonism coupled with timing that suggests a causal link.  *Id.*  (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

Simmons claims that Hammer denied his request for a new inhaler in retaliation for his having filed a grievance challenging the adequacy of his treatment for his COVID-19 infection. *See* ECF No. 13, pp. 17.  The record supports the first two essential elements of a retaliation claim.  On January 13, 2021, Simmons filed Grievance No. 909748 challenging the adequacy of his COVID-19 infection treatment. The filing of a prison grievance is conduct protected by the First Amendment. *See Mack v. Warden Loretto FCI*, 839 F.3d 286, 298 (3d Cir. 2016).  Although no case directly on point has been identified, the denial of a previously authorized medical device appears sufficient to deter a person of ordinary firmness from exercising constitutional rights.

Causation, however, is a closer call.  The record does not include direct evidence that Hammer denied Simmons a new inhaler because of his having filed a

15

grievance or that a pattern of antagonism existed between Hammer and Simmons. For temporal proximity alone to establish causation, the "timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." *Est. of Smith v. Marasco,* 318 F.3d 497, 512 (3d Cir.2003) (quoting *Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 503 (3d Cir.1997)). "'Unusually suggestive' temporal proximity means within a few days but no longer than a month." *Kostin v. Bucks Cmty. Coll. (Nursing Dep't),* 2022 WL 952729, at *11 (E.D. Pa. Mar. 30, 2022). Twenty-three days elapsed between Simmons' grievance and Hammer's initial denial of the inhaler. This timing puts this case right on the line to support an inference of causation. Given the procedural posture of this case and that the Court's obligation to draw all reasonable inferences in favor of the nonmoving party, the record is minimally sufficient to satisfy the causation element of Simmons' retaliation claim.

"If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that 'they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.'" *Cooper v. Garman,* 2021 WL 4033113, at *8 (M.D. Pa. Sept. 3, 2021) (quoting *Rauser,* 241 F.3d at 334). Put differently, "[a] defendant may defeat the claim of retaliation by showing that [he] would have taken the same action even if the plaintiff had not engaged in the protected activity." *Lauren W.,* 480 F.3d at 267. The Medical Defendants argue that the record establishes that Hammer denied Simmons' request for renewal of his inhaler for medical reasons.

16

Once again, they rely exclusively on Simmons' medical records to support their position. They urge the Court to hold as a matter of law that Hammer would have made the same decision to deny renewal of the inhaler absent Simmons' grievance. This interpretation of the notes is certainly plausible, but the notes are far too cryptic to establish the Medical Defendants' proposed interpretation as a matter of law. Nowhere do the records state that Hammer determined that renewal of the inhaler was medically unnecessary or contraindicated. While the notes may permit such an inference, they do not compel one. The Medical Defendants have the burden of proving their "same decision" defense by a preponderance of the evidence. Like Simmons' obligation to produce evidence to support the essential elements of his claim to defeat summary judgment, the Medical Defendants must produce sufficient evidence to support their entitlement to judgment as a matter based on the "same decision" defense. The Medical Defendants likely would have met this burden of production for purposes of their motion had they supplemented the inconclusive medical records with an affidavit from Hammer attesting that he denied renewal of the inhaler based on his determination that the inhaler was not medically necessary. Instead, they opted to rely on the medical records alone. In doing so, they have come up short of a record to support the entry of summary judgment. Accordingly, it is recommended that the Medical Defendants' motion for summary judgment be denied as to Simmons' First Amendment retaliation claim against Hammer.

17

### E.    Conclusion

For the reasons discussed above, it is recommended that the Court grant in part and deny in part the Medical Defendants' motion for summary judgment. The motion should be granted as to Simmons' Eighth Amendment claim based on his COVID-19 treatment on and before January 15, 2021. The motion should be denied as to (1) Simmons' Eighth Amendment claim based on his medical treatment between January 15, 2021 and January 26, 2021; (2) his Eighth Amendment claim based on the denial of the renewal of his inhaler; and (3) his First Amendment retaliation claim based on the denial of renewal of his inhaler following his filing of a grievance objecting to his medical treatment.

### III.    Notice Concerning Objections

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72((b)(2), and Local Rule 72(D)(2), the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72(D)(2).

DATED this 17th day of February, 2026.

RESPECTFULLY SUBMITTED:

RICHARD A. LANZILLO
CHIEF UNITED STATES
MAGISTRATE JUDGE

18